UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EPPERSON<br><br>                              Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No.: 3:23-cv-01554-W-AHG<br><br>**ORDER DENYING MOTION TO REMAND [DOCS. 10 and 11]** |

Pending before the Court is Plaintiff James Epperson's motion ([Docs. 10 and 11[1]] "Motion") to remand this case to the San Diego Superior Court.  Defendant opposes ([Doc. 15] "Opposition").  Plaintiff has failed to reply.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. R. 7.1(d)(1).  For the following reasons, the Court **DENIES** the Motion.

//

---

[1] Plaintiff James Epperson has filed two motions to remand [Docs. 10 and 11].  The two motions appear to be identical, as such the Court will treat them as the same.

1

## I.  RELEVANT BACKGROUND

This case arises from Plaintiff James Epperson's alleged purchase[2] of a 2020 Chevrolet Bolt (the "Vehicle") from one of General Motors, LLC's ("Defendant") "authorized dealer['s]" for an unspecified amount. (*Complaint* at ¶ 7-9.[3]) According to Plaintiff, the vehicle was covered by: (1) an express warranty, under which Defendant promised that the Vehicle "would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the [Vehicle] had defects, [Defendant] would repair the defects"; as well as (2) an implied warranty that the "[Vehicle] would be of the same quality as similar vehicles . . . [and] would be fit for the ordinary purposes for which similar vehicles are used." (*Id.* ¶¶ 10, 11.) The Complaint alleges, however, that during the warranty period, the Vehicle "exhibited defects" and that when Plaintiff notified Defendant of such "defects" and "attempted to invoke the applicable warranties," Defendant "represented to PLAINTIFF that they could and would make the [Vehicle] conform to the applicable warranties . . . ." (*Id.* ¶ 13-14.) Specifically, Plaintiff alleges that Defendant "issued a recall notice for the [Vehicle]" warning Plaintiff not to charge the Vehicle's battery above "90%"; not to let the battery's mileage "fall below seventy (70) miles remaining"; and not to "park[] [the Vehicle] indoors overnight" because the Vehicle's battery "may ignite." (*Id.* at ¶ 18.) Yet, Plaintiff alleges that Defendant has since failed to "make the [Vehicle] conform to the applicable warranties." (*Id.* at ¶ 15.)

On July 21, 2023, Plaintiff filed a lawsuit against Defendant in the San Diego Superior Court, entitled *James Epperson v. General Motors LLC, et al.*, No.37-2023-00031140-CU-BC-CT. The Complaint asserts three causes of action under the Song-

---

[2] The Complaint alleges that Plaintiff "purchased" the Vehicle. *Complaint* at ¶ 4. Similarly, the Notice of Removal refers to the agreement the parties entered into as a "Purchase Agreement." *Notice of Removal* at ¶ 17. The Court notes however that based on Defendant's Opposition to the Motion for Remand, the Vehicle may have actually been leased instead of purchased. *Opposition* at 9:7-13.

[3] The Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit A [Doc. 1-2].

Beverly Consumer Warranty Act (Cal. Civ. Code § 1790, *et seq*.) (the "Song-Beverly Act"); one cause of action alleging fraud; and another alleging violations of the California Business & Professions Code § 17200. (*Complaint* at ¶¶ 35-120.) Plaintiff seeks, among other things, general, special, and actual damages; rescission of the purchase contract and restitution of all monies expended; compensatory damages for the diminution in value of the Vehicle; a civil penalty of two times Plaintiff's actual, incidental, and consequential damages; consequential and incidental damages, punitive damages, attorney's fees and costs, and prejudgment interest at the legal rate. (*Id.* Prayer ¶¶ a–j.)

On August 23, 2023, Defendant removed the case to this Court based on diversity jurisdiction. (*Notice of Removal* [Doc. 1].) Plaintiff now moves to remand, arguing that Defendant has not met its burden of overcoming the presumption against removal. (*Motion for Remand* [Doc. 11] 6:19-26.) While Plaintiff does not actually contest any of Defendant's allegations regarding the existence of diversity jurisdiction, Plaintiff contends that Defendant must presently prove the existence of diversity jurisdiction by a preponderance of the evidence and complains that Defendant has not yet produced such evidence. (*Motion for Remand* at 7:16-11:2.) Defendant responds that it is not required to prove the existence of jurisdiction by a preponderance of the evidence at this stage. (*Opposition* [Doc. 15] at 1:12-25.) Plaintiff has not filed a reply.

II. **LEGAL STANDARD**

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States . . . ." 28 U.S.C. § 1332.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction

and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

In this vein, Plaintiff's Motion argues that Defendant has the "burden to prove, by preponderance of the evidence, that removal is proper." (*Motion for Remand* at 7:5-8.) However, for purposes of the amount in controversy requirement, "the notice of removal must include only 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 700 (9th Cir. 2018) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (applying *Dart Cherokee's* holding regarding the preponderance of the evidence standard to diversity cases beyond the CAFA context). Courts only move to Plaintiff's desired preponderance of the evidence standard "after 'the plaintiff contests, or the court questions, the defendant's allegation' and 'both sides submit proof.'" *Schneider*, 756 F. App'x at 700. The same is true for the diversity of citizenship requirement. *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1068 (9th Cir. 2021) ("[N]otice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements.").

Here, Defendant's Notice of Removal plainly alleges that the diversity of citizenship and amount in controversy requirements are met and does so in detail. (*Notice of Removal* at 3-5; *see infra* Section III.) Specifically, the Complaint alleges that Plaintiff is a citizen of California while Defendant is a citizen of Michigan and Detroit. (*Complaint* at ¶ 1; *Notice of Removal* at ¶ 12-14.) The Complaint also alleges that the

amount in controversy in this case is: (1) approximately $14,466.70[4] in actual damages; plus (2) roughly $50,000 in potential attorney's fees; along with (3) a civil penalty up to twice the amount of actual damages (~$28,933.40). (*Notice of Removal* at ¶¶ 17-19; *see infra* Section III.) Thus, Defendant has plausibly alleged that both the diversity of citizenship and amount in controversy requirements are met.

From there, Plaintiff *could* require Defendant prove these allegations by a preponderance of the evidence if he actually contested any of these allegations in his Motion. However, Plaintiff's Motion does *not* actually contest any of Defendant's allegations. Instead, the Motion simply asserts that Defendant has the burden of establishing jurisdiction by a "preponderance of the evidence" without ever identifying which of Defendant's allegations Plaintiff contests. (*See Motion for Remand* at 9:22-24; *see generally Notice of Removal* at 9:20-22.) If Plaintiff cannot or will not identify which of Defendant's diversity of citizenship or amount in controversy allegations he contests, the preponderance of the evidence standard is not triggered.

Regardless, even if Plaintiff had identified allegations in the Notice of Removal that he contests, or if the Court questioned such allegations, Defendant has also satisfied the more stringent preponderance of the evidence standard by attaching a declaration to the Notice of Removal containing evidence supporting its contention that the parties are diverse and that the amount in controversy exceeds $75,000. (*See Notice of Removal* at Exs. A-C; *infra* Section III.) Plaintiff, meanwhile, failed to present the Court with any contradictory evidence.

## III.   DISCUSSION

As outlined above, the Court will not require Defendant to prove its allegations of diversity of citizenship and amount in controversy by a preponderance of the evidence

---

[4] *See infra* Section III(b)(1).

(although Defendant has also satisfied that burden).  From here, the Court turns to evaluating whether Defendant has met its burden of plausibly alleging that the parties are diverse and that the amount in controversy exceeds $75,000.00.

### A. Diversity of Citizenship

To establish citizenship for diversity purposes, a natural born person must be a citizen of the United States and be domiciled in a particular state.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Persons are domiciled in the place they reside with the intent to remain or to which they intend to return. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A corporation is a citizen of the state in which it is incorporated and of the state where it has its principal place of business.  28 U.S.C. 1332(d).  LLCs are citizens of the states in which its members are citizens. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

Here, the Notice of Removal alleges that there is complete diversity of citizenship in this case. (*Notice of Removal* at ¶ 11.)  Specifically, Defendant alleges that Plaintiff is a citizen of California while Defendant (an LLC) is 100% owned by General Motors Holdings, LLC; who in turn is 100% owned by General Motors Company—which is a Delaware corporation with its principal place of business in Michigan.  (*Id*. at ¶ 12.)  Thus, Defendant alleges complete diversity exists because it is a citizen of Delaware and Michigan while Plaintiff is a citizen of California.  (*Id*. at ¶ 14.)  Furthermore, Plaintiff's own Complaint alleges that he is a citizen of California.  (*Complaint* at ¶ 1.)  Nor does Plaintiff ever actually contest that the parties are diverse.  Accordingly, the Court finds that Defendant has met its burden of plausibly alleging that the diversity of citizenship requirement is met.

### B. Amount in Controversy

In calculating the amount in controversy, courts must consider "the 'amount at stake in the underlying litigation.'" *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Chavez*, 888 F.3d at 417-18). Thus, "the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Id*.

### 1. Actual Damages

While the Complaint does not specify a damages figure, Defendant's Notice of Removal and accompanying Kuhn Declaration[5] alleges that the average manufacture's suggested retail price of the 2020 Chevrolet Bolt (the same model year Plaintiff alleges he purchased) was $38,371.00. (*Notice of Removal* at ¶ 17; *Kuhn Decl.* at ¶ 8.) *See Schneider*, 756 F. App'x at 701 ("Ford satisfied that more stringent [preponderance of the evidence] standard by attaching a declaration to its notice of removal. That declaration provided evidence that approximately 68,255 new F-150s from model years 2015-2017 were sold in California during the five years between the class date and the date the lawsuit was filed, and that the F-150s' average MSRP was $45,498.94 for those model years."). Since Plaintiff does not allege how much he actually paid for the Vehicle (a number which he undoubtedly knows) the Court would normally accept that Defendant had adequately alleged in its Notice of Removal that the actual damages at issue are $38,371.00.

However, Defendant's Opposition complicates the matter by conceding (for the first time) that Plaintiff actually leased the Vehicle and only paid a total of $14,466.70 towards the lease. (*Oppositon* at 9:7-13.) Absent any reply from Plaintiff, the Court will

---

[5] The Kuhn Declaration is attached to the Notice of Removal as Doc. 1-4.

interpret this concession to effectively modify Defendant's amount in controversy allegations from the Notice of Removal down to $14,466.70.

Accordingly, Defendant must find at least an additional $60,533.31 to exceed the required $75,000 in controversy.

### 2. **Attorney's Fees**

28 U.S.C. section 1332 instructs that when calculating the amount in controversy, courts should exclude "interest and costs." However, the Ninth Circuit has made clear that "attorneys' fees award under fee-shifting statutes or contracts are included in the amount in controversy." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Indeed, Cal. Civ. Code section 1793.4 states that when a plaintiff prevails in an action brought under Cal. Civ. Code section 1793.2, the plaintiff "*shall* be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees . . . ." (Emphasis added).

Here, since Plaintiff's first three causes of action allege violations of the Song-Beverly Act, he will be entitled to recover his reasonable attorney's fees under section 1793.4 if he prevails. (*See Complaint* at ¶¶ 65 ("PLAINTIFF is entitled under the Act to recover . . . actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action."; 46; 54.) As such, the Court must consider what attorney's fees Plaintiff would likely be entitled to if he prevailed when calculating the amount in controversy.

Defendant alleges in its Notice of Removal that attorney fees in similar Song-Beverly Act cases "regularly approach or exceed $50,000.00." (*Notice of Removal* at ¶ 19.) Indeed, Defendant attaches to its Notice of Removal (by way of the Kuhn Declaration) a number of cases and court orders awarding plaintiffs roughly $50,000 or more in Song-Beverly Act cases regarding single vehicles. (*Kuhn Decl*. Ex. C. (*Bowser v. Ford Motor Company*, 78 Cal. App. 5th 587 (2022) (upholding trial court's award of

$836,528.12 in attorney's fees to Plaintiff in case over a single $43,084.68 vehicle)); *Kuhn Decl*. Ex. B (*Anderson v. Ford Motor Company*, 74 Cal. App. 5th 946 (2022) (upholding trial court's award of $643,615.00 in attorney's fees to Plaintiff in case over a single $47,715.60 vehicle)); *Kuhn Decl.* Ex. A at 120 (*Zargarian v. BMW of North America, LLC*, 442 F. Supp. 3d 1216 (C.D. Cal. 2020) (awarding Plaintiff $145,538.50 in attorney's fees in case over a single vehicle)); *Kuhn Decl*. Ex. A at 98 (*Jurosky v BMW of North America, LLC*, (No. 19cv706 JM (BGS)) (S.D. Cal. August 25, 2020) (awarding Plaintiff $106,703.00 in attorney's fees in case over a single $61,298.40 vehicle)); *Kuhn Decl*. Ex. A at 181 (*Zomordian v. BMW of North America, LLC*, No. CV 17-5061-DMG (C.D. Cal. July 23, 2019) (awarding Plaintiff $213,447.50 in attorney's fees in case over a single vehicle)); Kuhn Decl. Ex. A at 87 (*Nisim v. Mercedes-Benz USA, LLC*, No. 20STCV48243 (Los Angles Super. Ct., August 28, 2023) (awarding Plaintiff $43,169.00 in attorney's fees in case over a single vehicle)); *Kuhn Decl*. Ex. A at 89 (*Urquiza v. Ford Motor Company*, No. 20STCV16064 (Los Angles Super. Ct., June 3, 2022) (awarding Plaintiff $82,000.00 in attorney's fees in case over a single vehicle));  *Kuhn Decl*. Ex. A at 137 (*Gonzalez v. Mercedez-Benz USA, LLC*, No. SC128379 (Los Angeles Co. Super. Ct., December 18, 2020) (awarding Plaintiff $169,963.50 in attorney's fees in case over single vehicle)).)

In estimating the amount of reasonable attorney's fees Plaintiff would likely incur (and thus be entitled to receive if he were to prevail) in this case, the Court may "rely on '[its] own knowledge of customary rates and [the Court's] experience concerning reasonable and proper fees.'" *Fritsch*, 899 F.3d at 795 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).  Given the Court's own knowledge of customary rates for Song-Beverly Act cases and experience concerning reasonable and proper attorney's fees in such cases; Defendant's allegations that Plaintiffs attorney's fees in this case would likely be around or exceed $50,000.00 (along with supporting cases); and Plaintiff's lack of presenting any argument or evidence to the contrary; the Court finds that Plaintiff's likely recoverable attorney's fees in this case (if successful)—when

combined with the actual damages at issue—would push Plaintiff's recovery over $75,000.

### 3. Civil Penalties

While the damages at issue in this case plus Plaintiff's potential attorney's fees exceed $75,000, Defendant also argues the Court should include the Song-Beverly Act's civil penalty provision when calculating the amount in controversy requirement. (*Notice of Removal* at ¶ 19.)

Cal. Civ. Code section 1794(d) states that "[i]f the buyer establishes that the failure to comply was *willful*, the judgment may include . . . a civil penalty which shall not exceed two times the number of actual damages." (Emphasis added). There is a split among district courts in the Ninth Circuit about when to include potential Song-Beverly Act civil penalties when calculating the amount in controversy. *E.g.*, *Ferguson v. KIA Motors Am. Inc.*, 2021 WL 1997550, at *3 (E.D. Cal. May 19, 2021) (collecting and comparing cases in Southern and Central Districts of California and stating "[d]istrict courts in the Ninth Circuit are split on whether to include Song-Beverly Act civil penalties in calculations to assess the amount in controversy.")  In the past this Court—like many others—has taken the position that civil penalties under the Song-Beverly Act should not count towards the amount in controversy requirement where the complaint merely requests civil penalties in the prayer for relief. *Ronquillo v. BMW of N. Am., LLC*, 2020 WL 6741317, at *2 (S.D. Cal. Nov. 17, 2020).  Instead, there must actually be allegations of willfulness in the complaint. *E.g.*, *id*. at *3 ("Rather than assuming that because a civil penalty is available, one will be awarded, the defendant must make some effort to justify the assumption by, for example, pointing to allegations in the Complaint . . . ."); *Ferguson*, 2021 WL 1997550, at *4 (holding that the court will only include the Song-Beverly Act's civil penalties in calculating the amount in controversy where defendant points out where in the complaint "plaintiffs allege willfulness"); *Villegas v. Ford Motor Co.*, 2023 WL 3144540, at *10 (E.D. Cal. Apr. 28, 2023), report and

recommendation adopted, 2023 WL 4669863 (E.D. Cal. July 20, 2023) ("[w]here a plaintiff properly alleges entitlement to the Act's civil penalty, which includes allegations of the requisite willfulness by the defendant, up to two times the amount of actual damages is put at issue whether or not that amount is ultimately awarded.").

Here, the Complaint goes beyond merely requesting the Song-Beverly Act's civil penalties in the prayer for relief.  Instead, Plaintiff makes numerous allegations of willful misconduct against Defendant in the body of the Complaint.  (*Complaint* at ¶¶ 43 ("The failure of [Defendant] to make the SUBJECT VECHICLE conform to the applicable express warranties was willful . . . ."); 44 ("The failure of [Defendant] to replace the SUBJECT VEHICLE or make restitution to PLAINTIFF was willful . . . ."); 45 ("The failure of [Defendant] to refund the consideration paid . . . or to replace the SUBJECT VEHICLE . . . was willful . . . ."); 69 ("[Defendant] willfully, falsely, and knowingly marketed the subject vehicle as having a range capacity to reach 259-miles on a full charge.").)  If such allegations of willfulness are proven true in this case, the Song-Beverly Act's civil penalty award of up to twice Plaintiff's actual damages (~$14,466.70) would be available—and thus could total as high as $28,933.40 in civil penalties alone.  This combined with the actual damages and potential attorney's fees at issue, would more than exceed the required $75,000.00.

### C. Procedural Requirements

Lastly, Plaintiff asserts in its Motion for Remand that "Defendant must demonstrate that all of the requirements of 28 U.S.C. § 1446 are present, including that (1) a notice of removal containing the required allegations was filed within the time allowed, (2) all relevant parties have joined in the removal, and (3) Defendant attached all of the relevant pleadings from the Superior Court to the notice of removal." (*Motion for Remand* at 11:13-18.)  However, Plaintiff does not actually argue that Defendant's Notice of Removal fails to meet any of these requirements.  Thus, the Court does not interpret Plaintiff to be moving to remand on these

grounds. Especially where, on its face, the Notice of Removal alleges that: (1) the Complaint was served on July 26, 2023 and then removed on August 23, 2023 (i.e. within the required 30 days) (*Notice of Removal* at ¶ 3); (2) the only named defendant is the one who filed the Notice of Removal (*see* 28 U.S.C. § 1446(b)(1) ("all defendants who have been properly joined and served must join in or consent to the removal of the action"); *Tucker v. Royal Adhesives & Sealants, LLC*, 2023 WL 2666056, at *6 (C.D. Cal. Mar. 28, 2023) (citing *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 966 (9th Cir. 2002)) ("[p]er its terms, fictitiously named defendants are not to be considered when assessing the propriety of removal jurisdiction based on diversity.")); and (3) all the relevant state court pleadings plainly *are* attached to the Notice of Removal (*see generally Notice of Removal* at Exs. A-B).

### IV. CONCLUSION & ORDER

Because Defendant has sufficiently established that the amount in controversy exceeds $75,000 and that there is complete diversity between the parties, the Court **DENIES** Plaintiff's Motion [Doc. 10 and 11].

**IT IS SO ORDERED.**

Dated: November 28, 2023

Hon. Thomas J. Whelan
United States District Judge