1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EPPERSON<br><br>                              Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC, a limited liability company<br><br>                              Defendant. | Case No.:  3:23-cv-01554-W-AHG<br><br>**ORDER GRANTING MOTION TO DISMISS [DOC. 7] IN PART AND GRANTING REQUEST FOR JUDICIAL NOTICE [DOC. 7-2]** |

        Pending before the Court is Defendant General Motors, LLC's ("Defendant") motion to dismiss ([Doc. 7], "Motion") the fourth and fifth causes of action in Plaintiff's complaint.  ([Doc. 1-2], "Complaint".)  The Motion also asks the Court to take judicial notice of certain EPA mileage range estimates.  ([Doc. 7-2], "RJN".)  Plaintiff James Epperson ("Plaintiff") opposes the Motion.  ([Doc. 8], "Opposition" [1].)  Defendant has replied.  ([Doc 12], "Reply".)

        The Court decides the matter on the papers submitted and without oral argument.  *See* Civ. R. 7.1(d)(1).  For the following reasons, the Court **GRANTS IN PART** the Motion.  The Court also **GRANTS** the Request for Judicial Notice.

_____

[1] Because Plaintiff's Opposition does not contain page numbers, all page citations in this Order are to the ECF page number.

1

2

## I. RELEVANT BACKGROUND

3

This case arises from Plaintiff's purchase[2] of a 2020 Chevrolet Bolt (the

4 "Vehicle") from one of Defendant's "authorized dealer[s]" for an unspecified amount

5 "[o]n or about January 16, 2021." (*Complaint* at ¶ 7-9.) According to Plaintiff, the

6 vehicle was covered by: (1) an express warranty, under which Defendant promised that

7 the Vehicle "would be free from defects in materials, nonconformities, or workmanship

8 during the applicable warranty period and to the extent the [Vehicle] had defects,

9 [Defendant] would repair the defects"; as well as (2) an implied warranty that the

10 "[Vehicle] would be of the same quality as similar vehicles . . . [and] would be fit for the

11 ordinary purposes for which similar vehicles are used." (*Id.* ¶¶ 10, 11.) The Complaint

12 alleges however that during the warranty period, the Vehicle "exhibited defects" and that

13 when Plaintiff notified Defendant of such "defects" and "attempted to invoke the

14 applicable warranties," Defendant "represented to PLAINTIFF that they could and would

15 make the [Vehicle] conform to the applicable warranties . . . ." (*Id.* ¶¶ 13-14.)

16 Specifically, Plaintiff alleges that Defendant "issued a recall notice for the [Vehicle]"

17 warning Plaintiff not to charge the Vehicle's battery above "90%"; not to let the battery's

18 mileage "fall below seventy (70) miles remaining"; and not to "park[] [the Vehicle]

19 indoors overnight" because the Vehicle's battery "may ignite." (*Id.* at ¶ 18.) Yet,

20 Plaintiff alleges that Defendant has since failed to "make the [Vehicle] conform to the

21 applicable warranties." (*Id.* at 15.)

22

On July 21, 2023, Plaintiff filed a lawsuit against Defendant in the San Diego

23 Superior Court, entitled *James Epperson v. General Motors LLC, et al.*, No.37-2023-

24

25 [2] The Complaint alleges that Plaintiff "purchased" the Vehicle. *Complaint* at ¶ 4. Similarly, the
Notice of Removal refers to the agreement the parties entered into as a "Purchase Contract."
26 *Notice of Removal* at ¶ 17. The Court notes however that Defendant has indicated in other filings
27 in this case that Plaintiff may have actually leased the Vehicle instead. (*See Opposition to
Motion for Remand* [Doc. 15] at 9:8-13.) However, this Order is concerned only with the
28 allegations in the Complaint.

2

00031140-CU-BC-CT.  The Complaint asserts three causes of action under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790, *et seq*); one cause of action alleging fraud; and another alleging violations of the California Business & Professions Code § 17200 ("UCL").  (*Complaint* at ¶¶ 35-120.)

On or about August 23, 2023, Defendant removed the case to this Court based on diversity jurisdiction.  (*Notice of Removal.*)  Defendant now moves to dismiss the Complaint's fourth and fifth causes of action—for fraud (both affirmative misrepresentation and fraudulent concealment) and violation of the UCL—arguing: (1) they fail to meet Rule 9(b)'s particularity requirement; (2) advertising EPA range mileage estimates cannot constitute fraud; (3) the fraudulent concealment claims are barred by the economic loss rule; and (4) Defendant had no duty to disclose the alleged Vehicle "defects" to Plaintiff because the parties had no transactional relationship (*i.e.*, Plaintiff purchased the Vehicle from a dealership, not Defendant).  (*See Motion* at 8:2-8.)  In turn, Plaintiff's Opposition argues that he is only required to allege facts "specific enough to give defendants notice of the particular misconduct so they can defend against it" and that a transactional relationship did exist between Plaintiff and Defendant (i.e., that Defendant did owe a duty to disclose certain information to Plaintiff).  (*Opposition* at 3:21-5:7.)  Beyond that, Plaintiff asks for leave to amend if the Court grants the Motion.  (*Id*. at 5:9-6:9.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Additionally, in evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." *Gompper v. VISX, Inc*., 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While well-pled allegations in the complaint are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When a complaint alleges fraud, it must also "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b) ("Rule 9(b)"). This means that—when it comes to affirmative misrepresentations—the complaint must allege the "who, what, when, where, and how of the misconduct charged" and explain "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). The same is true for UCL causes of action, to the extent that they allege fraud or facts that necessarily constitute fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Although, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). But, these allegations of malice, intent, knowledge, and mental state still cannot be conclusory or speculative as they remain subject to Federal Rule of Civil Procedure 8 ("Rule 8").

1    When it comes to claims of fraudulent concealment, courts typically do not
2    require the same level of specificity as they do for affirmative misrepresentation.
3    *Baggett v. Hewlett-Packard Co*., 582 F. Supp. 2d 1261, 1267-68 (C.D. Cal. 2007)
4    (emphasis added) (citations omitted) ("[I]t is clear that a plaintiff in a fraudulent
5    concealment suit will 'not be able to specify the time, place, and specific content of
6    an omission as precisely as would a plaintiff in a false representation claim.'
7    Because such a plaintiff is alleging a failure to act instead of an affirmative act, the
8    plaintiff cannot point out the specific moment when the defendant failed to act.
9    So, a fraud by omission or fraud by concealment claim 'can succeed without the
10   same level of specificity required by a normal fraud claim.' . . . . [Plaintiff has
11   satisfied its pleading requirement by] *alleging that 'Plaintiff and the Class were*
12   *unaware of the above facts and would not have acted as they did if they had*
13   *known*.'"); *Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal.
14   2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify
15   the time, place, and specific content of an omission as precisely as would a
16   plaintiff in a false representation claim. . . . [A] fraud by omission claim can
17   succeed without the same level of specificity required by a normal fraud claim. . . .
18   Plaintiffs adequately state a claim of fraud by omission. They allege that GM was
19   bound by a duty to disclose material facts about its speedometers from 2003 to
20   2007. GM failed to disclose this information, and plaintiffs reasonably claim that
21   they suffered damages after justifiably relying on GM's failure to disclose any
22   defects with the speedometers.").

23   Lastly, under FED. R. EVID. 2001(b)(2), courts may take judicial notice of
24   facts that "can be accurately and readily determined from sources whose accuracy
25   cannot reasonably be questioned." The records and reports of administrative
26   bodies, such as the EPA, "are proper subjects of judicial notice, as long as their
27   authenticity or accuracy is not disputed." *AECOM Energy & Constr., Inc. v.*
28   *Ripley*, 2019 WL 2610953, at *3 (C.D. Cal. Apr. 24, 2019); *see Welk v. Beam*

*Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041 (S.D. Cal. 2015) (citing *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986) (overruled on other grounds)).

## III.   DISCUSSION

### A.   Request for Judicial Notice

Defendant asks the Court to take judicial notice of the EPA's range mileage estimates for the 2020, 2021, and 2022 Chevrolet Bolt (259 miles).  (*RJN.*)  Indeed, Plaintiff has attached a screen capture of and URL to the U.S. Department of Energy's website, www.fueleconomy.gov, that shows that the EPA's range mileage estimates for the 2020, 2021, and 2022 Chevrolet Bolt is 259 miles.  ([Doc. 7-1], *Strotz Declaration* at ¶ 4; Ex. A to *Strotz Declaration*.)  Plaintiff's Opposition does not contest or even address the RJN.  Seeing as Plaintiff does not dispute the authenticity or accuracy of the EPA's range mileage estimates for the 2020 Chevrolet Bolt as listed on www.fueleconomy.gov, the Court grants the RJN and takes judicial notice that the EPA's range mileage estimate for the 2020 Chevrolet Bolt is 259 miles.  *See, e.g.*, *AECOM Energy & Constr., Inc.*, 2019 WL 2610953, at *3 (C.D. Cal. Apr. 24, 2019) (taking judicial notice of PDF from EPA's website); *Jarose v. Cnty. of Humboldt*, 2020 WL 999791, at *4 (N.D. Cal. Mar. 2, 2020) (taking judicial notice of information publicly available on the EPA's website).

### B.   Motion to Dismiss

#### 1.   Rule 9(b)'s Particularity Requirement

##### a)   Affirmative Misrepresentation (Fourth Cause of Action)

Defendant moves to dismiss the Complaint's fourth cause of action—to the extent that it alleges affirmative misrepresentation—on the grounds that the Complaint fails to plead fraud with particularity, as required by Rule 9(b).  (*Motion*

at 12:13-13:20.)  The elements of affirmative misrepresentation in California are: (1) misrepresentation; (2) knowledge of falsity; (3) intend to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) damages.  *See* California Civil Jury Instructions ("CACI"), 1900.  As outlined above, when it comes to claims of affirmative misrepresentation, the Complaint must indeed allege fraud with particularity, including the "who," "what," "when," and "where" of the misrepresentation.  Plaintiff does not contest this, nor offers any real arguments disputing Defendant's assertion that the Complaint fails to allege affirmative misrepresentation with particularity.  (*See Opposition* at 3:21-4:24.)

Indeed, Plaintiff would be hard pressed to do so.  While he may have alleged "what" the misrepresentation was—e.g., "[Defendant] willfully, falsely, and knowingly marketed the [Vehicle] as having the range capability to reach 259-miles on a full charge. . . . [T]he [Vehicle] could not achieve its expected range and safety due to the overheating battery"—the Complaint does *not* allege "who" made this representation to Plaintiff, "when" exactly it was made, and "where" the representation was made.  (*See Complaint* ¶¶ 69, 75.)  Instead, the Complaint makes generic references to Defendant's "every advertisement and consumer communication" without ever actually identifying a single, specific "false" advertisement.  (*Id*. at ¶ 74.)

Meanwhile, Plaintiff is permitted to plead Defendant's knowledge of the "defect" and intent to have Plaintiff rely on the "misrepresentation" "generally." *See* FED. R. CIV. P. 9(b).  Indeed, the Complaint does allege Defendant intended Plaintiff to rely on its "misrepresentations" as the obvious intent of an automaker's advertisement is to induce members of the public to purchase its vehicles.  (*See Complaint* at ¶ 23 ["[Defendant] undertook a marketing strategy that advertises a competitive mileage capacity (at [sic] or about 259 miles electric range on a full charge to convey that consumers . . . are receiving and [sic] electric vehicle that is able to maintain battery life for long distances."].)

However, the Complaint's allegations regarding knowledge of falsity (i.e., that Defendant knew of the "defects" at the time of the Vehicle's sale) are entirely conclusory and do not even meet the standard of Rule 8.  (*See Complaint* at ¶ 71 ["[Defendant] knew the representations were false . . . ."].)  While the Complaint does allege that Defendant "issued a recall notice" for the Vehicle "stating that its battery may ignite when nearing a full charge" and "warn[ing] Plaintiff that the Vehicle's charge should not exceed 90% . . .[nor] fall below seventy (70) miles remaining . . . [nor] be parked indoors overnight"; this recall was issued to Plaintiff *after* he had already purchased the Vehicle—and thus does not plausibly support Plaintiff's conclusory allegation that Defendant was aware of the "defect" at the time of sale.  (*Complaint* at ¶ 18; *see id*. at ¶ 85.)

Accordingly, the Complaint's affirmative misrepresentation claim must be dismissed for failing to meet Rule 9(b)'s particularity requirement.  Similarly, the affirmative misrepresentation claim must also be dismissed because it fails to allege any facts regarding Defendant's knowledge of falsity.

### b)  **Fraudulent Concealment (Fourth Cause of Action)**

Next, Defendant moves to dismiss the Complaint's fourth cause of action—to the extent that it alleges fraudulent concealment—also on the grounds that it fails to meet Rule 9(b)'s heightened pleading standard.  (*Motion* at 11:24-12:12.) However, as discussed above, claims of fraudulent concealment are not required to be pled with the same level of specificity as those of affirmative misrepresentation. Yet, Plaintiff is still required to allege facts regarding each element of fraudulent concealment (i.e. (1) concealment of material fact; (2) duty to disclose the fact; (3) intent to defraud; (4) that Plaintiff would have acted differently had he known the concealed fact; and (5) damages).  *See* CACI 1901.

Here, the fourth cause of action does allege that Defendant concealed a material fact, that Plaintiff would have acted differently had he known the

concealed fact, and that Plaintiff has been damaged.  (*Complaint* at ¶¶ 75 ["Defendant concealed and suppressed the fact that the vehicle could not achieve its expected range and safety due to the overheating battery.  Instead, Plaintiff would only be able to charge the vehicle to 90% and use the vehicle only if the use did not exceed 70 miles remaining"];  81 ["[H]ad [Plaintiff] known the truth, they would not have purchased the vehicle or would have paid significantly less"].) Similarly, the Complaint alleges (at least facially) that Defendant had a duty to disclose the omitted material facts.[3]  (*Complaint* at ¶ 78 ["Defendant had a duty to disclose that the battery in the vehicle is unsafe at the point of purchase because (1) Defendant had exclusive knowledge of the material, suppressed fact; (2) Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial representations about the mileage range, battery safety, and performance of the vehicle that were misleading . . . ."].)

Turning to whether the Complaint sufficiently alleges intent to defraud, Defendant cites *Tenzer v. Superscope, Inc.* for the proposition that that "something more than non-performance is required to prove the defendant's intent not to perform his promise."  39 Cal. 3d at 30.  However, *Tenzer* went on to qualify that: "[t]o be sure, fraudulent intent must often be established by circumstantial evidence. Prosser, for example, cites cases in which fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform."  *Id*. (citations omitted).  Here, Plaintiff facially alleged intent to defraud.  (*Complaint* at ¶¶ 75-76, 79 ["Defendant concealed and suppressed the fact that the [Vehicle] could not achieve its expected range and safety . . . . Knowledge and information regarding the vehicle's defects

---

[3] As to whether these allegations actually amount to Defendant owing Plaintiff a duty to disclose the claimed "defects", see *infra* Section III(B)(4).

were in the exclusive and superior possession of Defendant . . . . Defendant intended for Plaintiff to rely on these representations, as evidenced by Defendant's advertising which stresses the '259-mi' range of each vehicle."].)  That being said, at no point does the Plaintiff actually allege any *facts* supporting these conclusory assertions.  Indeed, the only factual allegation the Complaint makes regarding Defendant's knowledge of the "defects" is: "[i]n 2021, [Defendant] issued a recall notice for the [Vehicle] . . . . [Defendant] warned Plaintiff that the [Vehicle's] charge should not exceed 90% . . . ."  (*Complaint* ¶ 18.)  This allegation that Defendant issued a recall notice *after* Plaintiff acquired the Vehicle plainly does not support Plaintiff's conclusion that Defendant intended to defraud him.  (*See also id*. at ¶ 85.)

Accordingly, the fourth cause of action's fraudulent concealment claim fails because the Complaint fails to allege sufficient facts showing that Defendant's fraudulent intent.

### c)   UCL Claims (Fifth Cause of Action)

Next, Defendant argues that the fifth cause of action (UCL claim) fails because it does not meet Rule 9(b)'s particularity requirement.  (*Motion* at 10:27-28.)  However, not all UCL claims are subject to Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1103-04.  Since fraud is not an essential element of a UCL claim, Rule 9(b)'s heightened pleading requirement applies only to allegations that sound in fraud.  *Id*.  (emphasis added) (stating that "[plaintiff] asserts that alleged actions by [defendants] . . . state claims under . . . CAL. BUS. & PROF. CODE §§ 17200 and 17500. Fraud is not an essential element of a claim under these statutes. . . . [W]here fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirement of Rule 9(b)" and that while the complaint may not explicitly use the word "fraud," allegations of "*the circumstances constituting fraud*" count as allegations/averments of fraud triggering Rule 9(b).)

Under the UCL, a business practice is deemed "unfair competition" (and is thus prohibited) if it constitutes either: (1) an unlawful business practice; (2) an unfair business practice; or (3) a fraudulent business practice. CAL. BUS. & PROF. CODE § 17200. Here, Plaintiff alleges Defendant has engaged in all three. (*Complaint* at ¶¶ 87-120.)

*Unlawful Business Practices Prong*: The Complaint alleges that Defendant has engaged in "unlawful" business practices by violating CAL. BUS. & PROF. CODE § 17500 ("Section 17500"). (*Complaint* at ¶ 110.) Section 17500 in turn makes it unlawful to publicly make or disseminate—with the intent to dispose of property or to induce the public to enter into any obligation relating thereto—any statement which the speaker knows or reasonably should know to be "untrue or misleading." CAL. BUS. & PROF. CODE § 17500. While Plaintiff does not use the words "fraud" or "fraudulent" in alleging Defendant's conduct violated Section 17500, a closer reading of the Complaint reveals that many of Plaintiff's key allegations regarding the "unlawful" prong of the UCL constitute what are essentially averments of fraud. To wit, Plaintiff alleges: "Defendant's use of the defective battery, as alleged herein, is *false*, *deceptive*, *misleading*, and unreasonable . . . . Defendant *knew or should have known* of its unlawful conduct. . . . [T]he *misrepresentations* by Defendant detailed above constitute an unlawful business practice . . . ." (*Complaint* at ¶¶ 111-13 [emphasis added].) These allegations amount to "the circumstances constituting fraud" (specifically, affirmative misrepresentation) and thus must be plead with specificity. As explained above regarding Plaintiff's claims of affirmative misrepresentation, Plaintiff has failed to allege the "who," "when," and "where" of the "misrepresentations" and failed to plead any facts regarding Defendant's knowledge of the supposed defects at the time of the Vehicle's Sale and Defendant's intent for Plaintiff to rely on the "misrepresentations." Accordingly, these allegations of "unlawful" business practices must be stricken from Plaintiff's

1    UCL claim.  Without these allegations of fraudulent intent, Defendant's knowledge
2    of the defects, or specific facts surrounding the "misrepresentations," the
3    "unlawful" claim fails.

4          *Fraudulent Business Practices Prong*:  The Complaint also claims that
5    Defendant violated the UCL by engaging in "fraudulent" business practices.
6    (*Complaint* at ¶¶ 101-09.)   Obviously, satisfying the UCL's "fraudulent" prong
7    requires allegations amounting to "the circumstances constituting fraud."  (*See id.*
8    at ¶¶ 104-105 ["Defendant's use of a defective battery . . . is false, deceptive,
9    misleading, . . . and constitutes fraudulent conduct. Defendant knew or should have
10   known of their fraudulent conduct."].)  Under the "fraudulent" prong, Plaintiff
11   alleges both (a) affirmative misrepresentation—"Defendant's conduct of
12   advertising a battery range of 259 miles is fraudulent and likely to deceive
13   members of the public" (*Id*. at ¶ 103)—and (b) fraudulent concealment—
14   "Defendant's conduct of using a defective mattery at the point of sale without
15   notifying prospective consumers . . . is likely to deceive members of the public.
16   Defendant knew or should have known of their fraudulent conduct" (*Id*. at ¶¶ 104-
17   05).  To the extent the "fraudulent" prong alleges affirmative misrepresentation, it
18   fails for the same reasons Plaintiff's common law affirmative misrepresentation
19   claim fail.  (*See supra* Section III(B)(1)(a).)  Similarly, while the "fraudulent"
20   prong's concealment theory may not be subject to the same specificity requirement
21   as its affirmative misrepresenting theory, it fails to even meet Rule 8's
22   requirements regarding fraudulent intent.  (*See supra* Section III(B)(1)(b).)

23         *Unfair Business Practices Prong*:  The Complaint asserts that Defendant
24   violated the UCL by engaging in "unfair" business practices.  (*Complaint* at ¶ 87.)
25   California courts have used a variety of different tests to determine what
26   constitutes an "unfair" business practice under the UCL.  *See Doe v. CVS*
27   *Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020).  The Ninth Circuit has
28   acknowledged that at least three of the tests can be used to determine what an

3:23-cv-01554-W-AHG

"unfair" business practice is. *Id*. at 1215-16. As such, an "unfair" business practice is one where either: (1) the challenged conduct is "tethered to [violation of] any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law" (the "Tethering Test"); (2) the challenged conduct is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" (the "Immoral Test"); or (3) the challenged conduct's "impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer'" (the "Balancing Test"). *Id*. While some California Courts of Appeal have adopted a fourth test borrowed from § 45(a) of the Federal Trade Commission Act (the "FTC Test") (*e.g.*, *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394, 1403 (2006)) other California Courts of Appeal and the Ninth Circuit have explicitly rejected the applicability of the FTC Test to consumer cases like this. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) ("[W]e do not agree that the FTC test is appropriate in this circumstance. Though the California Supreme Court did reference FTC's section 5 as a source of 'guidance,' that discussion clearly revolves around anti-competitive conduct, rather than anti-consumer conduct."); *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 929 (N.D. Cal. 2015) ("the Ninth Circuit [in *Lozano*] has rejected the use of the FTC test in the consumer context"). Confusingly, in *Lozano* (2007), the Ninth Circuit also went on to "reject[] the balancing approach [Balancing Test]" (504 F.3d at 736) before later (in 2020) expressly endorsing its use without discussion of *Lozano* (*CVS Pharmacy, Inc.*, 982 F.3d at 1215). Adding to the confusion, since *Lozano*, the Ninth Circuit has also seemingly accepted the validity of the FTC Test in a consumer case at least twice—although both times in unpublished opinions without discussion of *Lozano*. *See Allen v. Hylands, Inc.*, 773 F. App'x 870, 874 (9th Cir. 2019) ("The UCL's unfair prong can apply to business practices that . . . cause unforeseeable injuries to consumers that are not outweighed by

countervailing benefits"); *Allen v. Hyland's, Inc.*, 2022 WL 1500795, at *2 (9th Cir. May 12, 2022). Given that it is the most recently *published* Ninth Circuit opinion on the matter, the Court will follow the holding of *Doe v. CVS Pharmacy* and holds that an "unfair" business practice prong may be proven by either the Tethering, Immoral, or Balancing Tests.

Here, the Complaint expressly asserts its "unfair" UCL claim under the FTC Test the Ninth Circuit has rejected. (Complaint at ¶ 87 ["a challenged activity is 'unfair' when 'any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid.' *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006)"].) However, Plaintiff's allegations that Defendant's use of the "defective battery in the vehicle ha[d] no utility and financially harms purchasers" by causing them to "overpay[] for the [Vehicle] and receive[] a quality of vehicle less than what they expected" would also seem to state an "unfair" UCL claim under both the Immoral and Balancing tests. (*See Complaint* at ¶¶ 91, 94.) These allegations do not involve the "circumstances constituting fraud," fail to trigger Rule 9(b)'s heightened pleading requirement, and thus state valid UCL claim under the "unfair" prong.

## 2. EPA Mileage Range Estimates (Fourth and Fifth Causes of Action)

Next, Defendant argues that the fourth and fifth causes of action must be dismissed because, according to Defendant, its marketing of the EPA's range mileage estimates for the Vehicle cannot constitute misrepresentation. (*Motion* at 14:23-15:12.) Plaintiff does not address this argument in its Opposition.

Defendant cites *Gray v. Toyota Motor Sales, U.S.A., Inc.* for the proposition that "'as a matter of law, there is nothing false or misleading' about a car manufacturer's advertising that identifies the EPA fuel economy estimates for the

car." 554 Fed. Appx. 608, 609 (9th Cir. 2014) (quoting *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1470 (2009)).  Indeed, in *Gray*, the plaintiff sued Toyota under theories of both common law fraudulent concealment and the UCL for advertising the subject vehicle as having a fuel economy estimate (the same number as the EPA's fuel economy estimate for the subject vehicle) that was allegedly different than Toyoya's own internal fuel economy estimates for that vehicle. *Id.*  In *Gray*, the Ninth Circuit upheld the district court's dismissal of the claims with prejudice, stating "California law does not recognize a cause of action for publicizing EPA fuel economy estimates and omitting further explanation," and that Toyota had no duty to "disclose certain information known to it which conflicted with the EPA estimates." *Id.*  However, a close reading of *Gray* also makes clear that this holding applied only to the UCL and fraudulent concealment claims—not to claims of affirmative misrepresentation. *Id.* (emphasis added) ("[Plaintiff] is unable to establish that Toyota violated its duty under California law. [Plaintiff] does not allege that this case is governed by an existing warranty *or that any affirmative misrepresentations were made by Toyota*.").  This is because the basis for the ruling was that under California law "a manufacturer's duty to consumers is limited to warranty, *unless* a safety issue is present or *there has been some affirmative misrepresentation.*" *Id.*

Here, unlike in *Gray*, the Complaint *does* allege that Defendant made affirmative misrepresentations to Plaintiff about the Vehicle's range mileage estimates. (*Complaint* at ¶ 69 ["[Defendant] willfully, falsely, and knowingly marketed the subject vehicle as having a range capacity to reach 259-miles on a full charge.")  Of course, as discussed above, these allegations of affirmative misrepresentation fail because they were not plead with the required particularity. However, if Plaintiff properly plead affirmative misrepresentation against Defendant, *Gray* would not bar relief.  Furthermore, when it comes to the Complaint's fraudulent misrepresentation and UCL claims, Plaintiff alleges

misrepresentations beyond the range mileage issue.  (*E.g.*, *Complaint* at ¶¶ 27 ["[Defendant] issued a recall notice, stating that the vehicle may ignite when nearing a full charge . . . . [And that] the vehicle should not be parked indoors overnight due to the risk of fire."]; 29 ["Plaintiff expected to use the vehicle without the fear of the vehicle igniting and causing serious bodily harm."].)

Accordingly, Plaintiff's fraudulent concealment claim (fourth cause of action) and the fifth cause of action must be dismissed to the extent that they rely on Defendant's representations that the Vehicle's estimated range mileage was 259 miles (*i.e.*, the EPA's estimate range mileage for the Vehicle).  However, to the extent the fraudulent concealment claim and the fifth cause of action rely on other "misrepresentations" about the vehicle (*e.g.*, safety, battery fires), they do not violate the rule in *Gray*.  Similarly, if Plaintiff can sufficiently allege affirmative misrepresentation by Defendant regarding the Vehicle's estimated range mileage, that claim will not be subject to the rule in *Gray*.

### 3.   Economic Loss Rule (Fourth Cause of Action)

Next, Defendant argues that Plaintiff's fourth cause of action, to the extent that it alleges fraudulent concealment, fails as a matter of law because of the economic loss rule.  (*Motion* at 15:27-16:18.)  Plaintiff fails to contest this in its Opposition.

Under California law, "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  For this reason, federal courts sitting in diversity jurisdiction often dismiss fraudulent concealment claims brought against vehicle manufacturers.  *E.g., In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 850 n.5 (C.D. Cal. 2020) (collecting cases dismissing fraudulent concealment claims over vehicle

defects under the economic loss rule).  Here, Plaintiff's fraudulent concealment claims in the fourth cause of action indeed allege only economic injury. (*Complaint* at ¶ 81 ["had [Plaintiff] known the truth, they would not have purchased the vehicle or would have paid significantly less for the vehicle."].) Absent allegations of any other, non-economic injury, Plaintiff's claim for fraudulent concealment in the fourth cause of action necessarily fails as a matter of law.

### 4.    Direct Economic Relationship (Fourth Cause of Action)

Defendant argues that the fourth cause of action's fraudulent concealment claim also fails because there was no direct economic relationship between Plaintiff and Defendant—and thus Defendant never had a duty to disclose the alleged battery "defects" to Plaintiff.  (*Motion* at 16:22-18:8.)  Plaintiff responds by arguing he bought the Vehicle from one of Defendant's authorized dealerships, and that a car manufacturer's authorized dealer is the manufacturer's agent. (*Opposition* at 4:26-5:7.)

As an initial matter, parties generally do not have an affirmative duty to disclose information.  Indeed, the first element of a fraudulent concealment claims is that the defendant had a duty to disclose the information.  CACI 1901.  As the California Supreme Court has made clear, absent a fiduciary duty (which is not alleged here), a duty to disclose arises only in three circumstances: (1) the defendant had exclusive knowledge of the material fact; (2) the defendant actively concealed the material fact; or (3) the defendant made partial representations while also suppressing the material fact.  *Bigler-Engler v. Breg, Inc*., 7 Cal. App. 5th 276, 311 (2017); *see* CACI 1901.  For its part, Plaintiff alleges that: "Defendant had a duty to disclose that the battery in the vehicle is unsafe . . . because (1) Defendant had exclusive knowledge of the material, suppressed facts; (2)

Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial representations about the mileage range . . . ." (*Complaint* at ¶ 78.)

However, these three circumstances all "presuppose[] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise. A duty to disclose facts arises only when the parties are in a relationship that gives rise to the duty, such as 'seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement.'" *Bigler-Engler*, 7 Cal. App. 5th at 311 (citations omitted). Thus, there must be a "transaction" between the plaintiff and defendant and "[s]uch a transaction must necessarily arise from *direct dealings* between the plaintiff and defendant; it cannot arise between the defendant and the public at large." *Id*. at 311-12 (emphasis added). This is a problem for Plaintiff as he alleges that he acquired the vehicle from "an authorized dealer of [Defendant]," not directly from Defendant. (*Complaint* at ¶ 9.) As such, there would not appear to be a direct transaction between the Plaintiff and Defendant.

Plaintiff attempts to clear this hurdle by arguing that the "authorized dealer" was Defendant's "agent". *Id*. However, the Complaint does not actually allege any facts that support this conclusory assertion. Indeed, a number of courts have held that automobile dealerships, even manufacturer "authorized" ones, are not necessarily agents of automobile manufacturers. *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 953 (C.D. Cal. 2012) ("Plaintiffs cites paragraph 15 and 121, which state that 'Honda's dealers' 'are its agents' . . . . This allegation is essentially a legal conclusion framed as a factual allegation."); *Williams v. Yamaha Motor Corp., U.S.A.*, 2015 WL 13626022, at *6 (C.D. Cal. Jan. 7, 2015) ("[t]he relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not 'agents' of manufacturers."); *Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127, at *6 (C.D. Cal. June 12, 2013) ("Plaintiff alleges that

'[dealer], as an authorized Mercedes dealership, served as Mercedes' agent and representative' . . . . Plaintiffs have alleged no facts that . . . [dealer] in any respect serves as MBUSA's agent.").

Here, just like in *Keegan*, *Williams*, and *Friedman*, Plaintiff does not actually allege facts establishing an agency relationship between Defendant and the dealership Plaintiff purchased the Vehicle from. Instead, the Complaint simply makes the conclusory assertion that "[Plaintiff] acquired the [Vehicle] . . . from an authorized dealer and agent of [Defendant] . . . [a] retail merchant[] authorized by [Defendant] to do business in the State of California on behalf of [Defendant]." (*Complaint* at ¶ 9.) While the Court is unwilling to go so far as to say a dealer can never be the agent of an automobile manufacturer, the Complaint here does not allege facts sufficient to establish an agency relationship between Defendant and its dealers. *See, e.g.*, *Pereda v. Atos Jiu Jitsu LLC*, 85 Cal. App. 5th 759, 768 (2022) (citations omitted) ("Actual agency is based on consent, and turns on whether the principal has the right to control the agent's conduct. Ostensible agency is based on appearances, and turns on whether the 'the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent even though the third person is not actually an agent.'").

Plaintiff cites one recent California case in its Opposition, *Dhital v. Nissan North America*, *Inc.*, which found that plaintiffs' allegation that "Nissan's authorized dealerships are its agents for purposes of the sale of Nissan vehicles to consumers" sufficiently pled an agency relationship between Nissan and Nissan dealerships. 84 Cal. App. 5th 828, 844 (2022). However, *Dhital* is of no avail to Plaintiff for several reasons. First, *Dhital* is currently pending before the California Supreme Court, and thus has "no binding or precedential effect, and may be cited for potentially persuasive value only." Cal. R. Ct. 8.1115(e)(1). Second, a ruling by a California state court on its own pleading standards has no bearing on the pleading standards required in federal court. *E.g.*, *Miller v. Sawant*,

18 F.4th 328, 337 (9th Cir. 2021) ("Pleading in federal court is governed by Federal Rules of Civil Procedure, not state pleading requirements.").  Finally, the Court finds the reasoning *Dhital* unpersuasive, as it fails to discuss *Bigler-Engler*; any of the numerous cases holding automobile dealerships to not be agents of manufacturers; or engage in a substantive analysis regarding what factual allegations are required to successfully plead an agency relationship.

Accordingly, the fourth cause of action's fraudulent concealment claim also fails as a matter of law because it does not allege facts sufficient to establish that the dealership Plaintiff acquired the Vehicle from was an agent of Defendant—to wit, Plaintiff has not sufficiently alleged Defendant owed him a duty to disclose the Vehicle's alleged "defects."

### C.   <u>Leave to Amend</u>

In summation, this Order holds that:

- The fourth cause of action's affirmative misrepresentation claim must be dismissed because it fails to meet Rule 9(b)'s particularity requirement and fails to allege sufficient facts regarding Defendant's knowledge of falsity.

- The fourth cause of action's fraudulent concealment claim must be dismissed because: (a) it violates the economic loss rule; (b) fails to allege facts supporting Defendant's fraudulent intent; and (c) does not sufficiently allege that Defendant had a duty to disclose the Vehicle's supposed "defects" to Plaintiff.  Additionally, as currently pled, the fourth cause of action fails to state a valid fraudulent concealment cause of action—to the extent it alleges Defendant concealed that the Vehicle could not achieve its advertised 259 mileage range estimate (as determined by the EPA)—because California law is clear that an

3:23-cv-01554-W-AHG

automobile manufacturer advertising the EPA's mileage range estimates does not constitute fraudulent concealment.

- The fifth cause of action's claim under the "unlawful" UCL prong must be dismissed because, as currently plead, it relies on allegations that amount to "the circumstances constituting fraud" that are not plead with the requisite particularity.  For the same reason, the fifth cause of action's "fraudulent" prong must also be dismissed to the extent that it relies on an affirmative misrepresentation theory.  To the extent that the "fraudulent" prong relies on a theory of fraudulent concealment, it must be dismissed because it fails to allege facts regarding Defendant's fraudulent intent.  Additionally, the fifth cause of action must also be dismissed—to the extent that it complains Defendant advertised the Vehicle's EPA mileage range estimate of 259 miles—because "California law does not recognize a [UCL] cause of action for publicizing EPA fuel economy estimates and omitting further explanation."  However, the fifth cause of action's "unfair" UCL claim remains.

Plaintiff asks the Court for leave to amend the Complaint if it grants the Motion.  (*Opposition* at 5:9-6:9.)  Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires."  Furthermore, Ninth Circuit precedent is clear that leave to amend "should be grated with 'extreme liberty'" and only be denied when "it is clear . . . that the complaint could not be saved by any amendment."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).  While it may prove exceedingly difficult, the Court is not convinced that it would be impossible for Plaintiff to plead valid affirmative misrepresentation, fraudulent concealment, and "Unlawful"/"Fraudulent" UCL claims against Defendant here.  Considering this circuit's extremely liberal policies

towards amending complaints, the Court gives Plaintiff leave to file an amended complaint.  However, any amended complaint must strictly comply with this Order.  When amending, Plaintiff should bear in mind that the factual allegations in his amended complaint must be "consistent with" and may "not contradict the allegations in original complaint."  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

## IV.    CONCLUSION & ORDER

For the foregoing reasons, the Court takes Judicial Notice of EPA mileage range estimates Defendant requested [Doc. 7-2] and **GRANTS IN PART** the Motion to Dismiss the Complaint's Fourth and Fifth causes of action [Doc. 7].  The Court **GRANTS** Plaintiff leave to file an amended complaint.  Plaintiff may file an amended complaint **on or before January 10, 2024**.

**IT IS SO ORDERED.**

Dated:  December 13, 2023

Hon. Thomas J. Whelan
United States District Judge

3:23-cv-01554-W-AHG