UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EPPERSON<br><br>                                    Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC, a limited liability company<br><br>                                    Defendant. | Case No.:  3:23-cv-01554-W-AHG<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC. 19] IN PART** |

Pending before the Court is Defendant General Motors, LLC's ("Defendant") motion to dismiss ([Doc. 19], "Motion") the fourth and fifth causes of action in Plaintiff's first amended complaint.  ([Doc. 18], "FAC".)  Plaintiff James Epperson ("Plaintiff") opposes the Motion.  ([Doc. 20], "Opposition".)  Defendant has replied.  ([Doc 21], "Reply".)

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** the Motion **IN PART**.

1

3:23-cv-01554-W-AHG

## I.   RELEVANT BACKGROUND

This case arises from Plaintiff's purchase of a vehicle[1] ("Vehicle") from one of Defendant's "authorized dealer[s]" for an unspecified amount "[o]n or about January 16, 2021." (*FAC* at ¶ 5.)  According to Plaintiff, the Vehicle was covered by: (1) an express warranty, under which Defendant promised that the Vehicle "would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the [Vehicle] had defects, [Defendant] would repair the defects"; as well as (2) an implied warranty that the "[Vehicle] would be of the same quality as similar vehicles . . . [and] would be fit for the ordinary purposes for which similar vehicles are used."  (*Id.* ¶¶ 6, 7.)  The FAC alleges however that during the warranty period, the Vehicle "exhibited defects" and that when Plaintiff notified Defendant of such "defects" and "attempted to invoke the applicable warranties," Defendant "represented to PLAINTIFF that they could and would make the [Vehicle] conform to the applicable warranties . . . ."  (*Id.* ¶¶ 9-10.)  Specifically, Plaintiff alleges that Defendant "issued a recall notice for the [Vehicle]" sometime in "2021," warning Plaintiff to not charge the Vehicle's battery above "90%"; to not let the battery's mileage "fall below seventy (70) miles remaining"; and to not "park[] [the Vehicle] indoors overnight" because the Vehicle's battery "may ignite."  (*Id.* at ¶ 25.)  Yet, Plaintiff alleges that Defendant has since failed to "make the [Vehicle] conform to the applicable warranties."  (*Id.* at ¶ 11.)

On July 21, 2023, Plaintiff filed a lawsuit against Defendant in the San Diego Superior Court, entitled *James Epperson v. General Motors LLC, et al.*, No.37-2023-00031140-CU-BC-CT.  The original complaint ([Doc. 1-2], the "Original Complaint") asserted three causes of action against Defendant under the Song-Beverly Consumer

---

[1] While the original complaint alleged the Vehicle was as 2020 Chevrolet Bolt, VIN: lG1FY6S07L4150292 ([Doc. 1-2] at ¶ 7); the FAC simply alleges that the Vehicle is a "new motor vehicle" as defined by the Song-Beverly Act (*FAC* at ¶ 4).  However, other allegations in the FAC make clear that the Vehicle at issue is still a Chevrolet Bolt—although its year and VIN number are unclear.  (*See FAC* at ¶¶ 14-24.)

2

Warranty Act (Cal. Civ. Code § 1790, *et seq*); one cause of action alleging fraud; and another alleging violations of California Business & Professions Code § 17200 ("UCL"). (*Original Complaint* at ¶¶ 35-120.)

On or about August 23, 2023, Defendant removed the case to this Court based on diversity jurisdiction. ([Doc. 1], "Notice of Removal".) Defendant then moved to dismiss the Original Complaint's fourth and fifth causes of action—for fraud (both affirmative misrepresentation and fraudulent concealment) and violation of the UCL— arguing that: (1) they failed to meet Rule 9(b)'s particularity requirement; (2) advertising EPA range mileage estimates cannot constitute fraud; (3) the fraudulent concealment claims were barred by the economic loss rule; and (4) Defendant had no duty to disclose the alleged Vehicle "defects" to Plaintiff because the parties had no transactional relationship (*i.e.*, Plaintiff purchased the Vehicle from a dealership, not Defendant). (*See* [Doc. 7], "First MTD" at 8:2-8.) Ultimately, the Court granted the First MTD in part, dismissing fourth cause of action's affirmative misrepresentation claim with leave to amend on the grounds that it failed to meet Rule 9(b)'s particularity requirement or allege sufficient facts regarding Defendant's alleged knowledge of falsity; dismissing the fourth cause of action's fraudulent concealment claim with leave to amend on the grounds that it failed to allege facts regarding Defendant's fraudulent intent, did not allege facts showing Defendant had a duty to disclose the Vehicle's supposed "defects," and because advertising EPA mileage range estimates for electric vehicles does not constitute fraud under California law. (*See* [Doc. 17], "First MTD Order" at 20-21.) Similarly, the First MTD Order dismissed the fifth cause of action's UCL claim (with leave to amend) under the "unlawful" prong and the "fraudulent" prong on the ground that they also failed to meet Rule 9(b)'s particularity requirement. (*Id.*)

On January 1, 2024, Plaintiff filed his FAC, which included some additional factual allegations, in an attempt to cure the Original Complaint's deficiencies. On January 23, 2024, Defendant filed a second motion to dismiss, arguing that, once again: (a) the fourth cause of action's fraudulent misrepresentation claim must be dismissed for

failing to meet Rule 9(b)'s particularity requirement; (b) the fourth cause of action's fraudulent concealment claim must be dismissed because Defendant owed no duty to disclose any alleged "defects" to Plaintiff, the claim violates the economic loss rule, and the FAC fails to allege sufficient facts regarding Defendant's knowledge. (*Motion* at 8-9.) Additionally, the Motion argues that the fifth cause of action (UCL claim) must be dismissed on the grounds that Plaintiff has not established equitable jurisdiction, fails to allege any violation of an underlying statute as required by the "unlawful" prong of the UCL, and fails to identify a relevant public policy that Defendant has supposedly violated with respect to the UCL's "unfair" prong.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Additionally, in evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While well-pled allegations in the complaint

3:23-cv-01554-W-AHG

are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When a complaint alleges fraud, it must also "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b) ("Rule 9(b)"). This means that—when it comes to affirmative misrepresentations—the complaint must allege the "who, what, when, where, and how of the misconduct charged" and explain "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). The same is true for UCL causes of action, to the extent that they allege fraud or facts that necessarily constitute fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Although, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). But these allegations of malice, intent, knowledge, and mental state still cannot be conclusory or speculative as they remain subject to Federal Rule of Civil Procedure 8 ("Rule 8").

When it comes to claims of fraudulent concealment, courts typically do not require the same level of specificity as they do for affirmative misrepresentation. *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267-68 (C.D. Cal. 2007) (emphasis added) (citations omitted) ("[I]t is clear that a plaintiff in a fraudulent concealment suit will 'not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.' Because such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff cannot point out the specific moment when the defendant failed to act. So, a fraud by omission or fraud by concealment claim 'can succeed without the same level of specificity required by a normal fraud claim.' . . . . [Plaintiff has satisfied its pleading requirement by] *alleging that 'Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had*

*known.*'"); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim. . . . [A] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim. . . . Plaintiffs adequately state a claim of fraud by omission. They allege that GM was bound by a duty to disclose material facts about its speedometers from 2003 to 2007. GM failed to disclose this information, and plaintiffs reasonably claim that they suffered damages after justifiably relying on GM's failure to disclose any defects with the speedometers.").

## III.  DISCUSSION

### A.  Motion to Dismiss

#### 1.  The Fourth Cause of Action's Fraudulent Misrepresentation Claim Fails Rule 9(b)'s Particularity Requirement

The fourth cause of action's fraudulent misrepresentation claim proceeds with two distinct theories of misrepresentation.  First, it alleges that Defendant misrepresented the range, battery capacity, and safety of the Vehicle.  (*FAC* at ¶¶ 79-82.)  Second, it alleges that after Defendant became aware of defects with the Vehicle, that it promised Plaintiff it would replace the Vehicle's battery but never did.  (*Id*. at ¶¶ 83-85.)

##### a)  Alleged Misrepresentations Regarding the Vehicle's Range, Battery Capacity, and Safety

Defendant moves to dismiss the FAC's fourth cause of action—to the extent it alleges affirmative misrepresentation—on the grounds that the FAC fails to plead fraud with particularity, as required by Rule 9(b).  (*Motion* at 12-15.)  The elements of affirmative misrepresentation in California are: (1) misrepresentation; (2) knowledge of falsity; (3) intend to induce reliance on the misrepresentation; (4)

6

3:23-cv-01554-W-AHG

justifiable reliance; and (5) damages.  *See* California Civil Jury Instructions ("CACI"), 1900.  As outlined above, when it comes to claims of affirmative misrepresentation, the FAC must indeed allege fraud with particularity, including the "who," "what," "when," and "where" of the misrepresentation.

Just like in Plaintiff's Original Complaint, the FAC does allege "what" the misrepresentation was—e.g., "the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the charging capability of the vehicle . . . . Defendant advertised the vehicle as having a . . . mileage capacity of 259 miles per full charge. However, the vehicle is not capable of meeting this mileage expectation, due to the battery condition.  (*FAC* at ¶ 80, 96; *see First MTD Order* at 7.)  However, unlike the Original Complaint, the FAC *does* contain allegations regarding the "who," "when," and "where" of the misrepresentation.  (*FAC* at ¶¶ 15 ["In a press release in January 2016, General Motors said the Bolt will have a battery range over 200 miles . . . . The mileage representation was made absent any reference to the EPA estimated mileage range."]; 16 ["[I]n October 2019, General Motors made Adam Piper, a GENERAL MOTORS employee and Bolt battery expert, available to answer questions regarding the Chevy Bolt. Mr. Piper answered questions publicly on Facebook and the comments were republished in various websites. Mr. Piper, on behalf of GENERAL MOTORS, stated: 'We engineered the battery system so that you can charge to 100% and maximize range. . . . If you want maximum range, charge to 100%.'"].)

While these allegations are sufficient to satisfy the "misrepresentation" element of fraudulent misrepresentation, they fail to meet the "justifiable reliance" element in that Plaintiff never alleges that he personally saw and relied upon the January 2016 press release or Mr. Piper's October 2019 statements when buying the Vehicle.

3:23-cv-01554-W-AHG

Additionally, the FAC still fails to allege facts regarding Defendant's "knowledge" of the supposed defects at the time Plaintiff purchased the Vehicle. While allegations of knowledge may be made "generally," the allegations must still be factual, and the Court need not accept legal conclusions couched as facts. *See Papasan*, 478 U.S. at 286; *Sprewell*, 266 F.3d at 988.  Here, the FAC makes allegations that: Defendant became aware of unspecified "issues" with the Bolt's battery in 2016; NHTSA "published a warning" in October 2017 about overcharging lithium ion batteries, which is apparently the kind of battery in the Chevrolet Bolt; Defendant found "issues with low voltage" in the Chevrolet Bolt's batteries in November 2017; Defendant received "reports of vehicles losing propulsion" in April 2018; and Defendant became aware of "the first battery fire" involving the Chevrolet Bolt in March 2019.  (*FAC* at ¶¶ 16-23.)  Unfortunately for Plaintiff, such generic assertions that Defendant was aware of unspecified "issues" with the Bolt's batteries; that NHTSA issued a warning against overcharging lithium-ion batteries generally; and that Defendant was aware of one "battery fire" are not enough to show Defendant's knowledge of the alleged defects with Plaintiff's Vehicle at the time of sale.  Indeed, Plaintiff never connects whether or how these "issues" and singular "fire" with Bolts in the 2016-2019 time period relate to the alleged defects in Plaintiff's Vehicle in 2021.

The closest Plaintiff comes to sufficiently alleging Defendant's knowledge of the supposed defects is "[i]n *2021*, Defendant . . . issued a recall notice for the [Vehicle]," warning that its "charge should not exceed 90%, the battery mileage should not fall below seventy (70) miles remaining, and the vehicle should not be parked indoors overnight."  (*Id.* at ¶ 25 [emphasis added].)  However, Plaintiff also alleges that he purchased the Vehicle on January 16, *2021*.  (*Id.* at ¶ 5 [emphasis added].)  Since the FAC does not clearly allege whether the recall was issued prior to Plaintiff's purchase of the Vehicle, Plaintiff cannot rely on the recall notice to show Defendant's knowledge of the alleged defects.

3:23-cv-01554-W-AHG

**b)** **Alleged Misrepresentations Regarding Replacing the Vehicle's Battery**

Next, the FAC also alleges that Defendant's Vice-President Steve Hill made affirmative misrepresentations when he sent Plaintiff a letter in December 2021 "promising" that the Vehicle's "battery would be replaced" under the Vehicle's warranty—but then never did replace the battery. (*Id.* at ¶¶ 41-43, 83.)

While this may be enough to show what the alleged "misrepresentation" was—i.e., that Defendant promised to replace the Vehicle's battery but then never did—it is not enough to show that Defendant knew this representation was false when it was made or that it did so with the intent of mislead plaintiff. Additionally, Plaintiff's allegations of damages on this point are tentative at best. (*See id*. at ¶ 85 ["Plaintiff relied on the representation by Mr. Hill and did not take legal action against General Motors at the time and did not request that General Motors repurchase her vehicle"].)

**2.** **The Fourth Cause of Action's Fraudulent Concealment Claim**

Next, Defendant moves to dismiss the FAC's fourth cause of action—to the extent that it alleges fraudulent concealment—also on the grounds that it sufficiently fails to allege all the elements of fraudulent concealment and violates the economic loss rule. While Plaintiff is not necessarily required to plead fraudulent concealment with the same level of specificity as affirmative misrepresentation, he still must allege facts regarding each element of fraudulent concealment—i.e., (1) concealment of material fact (namely, "what" was concealed and whether it was material); (2) duty to disclose the fact; (3) intent to defraud; (4) that Plaintiff would have acted differently had he known the concealed fact; and (5) damages. *See* CACI 1901.

9

3:23-cv-01554-W-AHG

**a)    Plaintiff Has Adequately Alleged Concealment, That He Would Have Acted Differently, And Damages**

First, the FAC alleges that Defendant concealed a material fact, that Plaintiff would have acted differently had he known the concealed fact, and that Plaintiff has been damaged. (*FAC* at ¶¶ 80 ["[T]he vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the charging capability of the vehicle"]; 87 ["Defendant concealed and suppressed the fact that the vehicle could not be fully charged or stored indoors."]; 81 ["[H]ad [Plaintiff] known the truth, they would not have purchased the vehicle or would have paid significantly less"].) And while Defendant is correct that some of Plaintiff's allegations regarding the Vehicle's range rely on the EPA's range mileage estimates for the Bolt—which, as this Court has already ruled, cannot form the basis of a fraudulent misrepresentation claim— the FAC includes a number of allegations that do not rely on the EPA's range mileage estimates. (*FAC* at ¶¶ 15 ["In a press release in January 2016, [Defendant] said the Bolt will have a battery range over 200 miles . . . . The mileage representation was made absent any reference to the EPA estimated mileage range."]; 25 ["[Defendant] issued a recall notice, stating that the vehicle may ignite when nearing a full charge . . . . [And that] the vehicle should not be parked indoors overnight."]; 35 ["Plaintiff expected to use the vehicle without the fear of the vehicle igniting and causing serious bodily harm or death."]; *see First MTD Order* at 14-16.)

**b)    Plaintiff's Allegations Regarding the Warranty Adequately State The Existence Of A Direct Transactional Relationship**

Next, Defendant argues that it never owed a duty to disclose any information to Plaintiff because it never had a "direct economic relationship" with Plaintiff. (*Motion* at 20-22.) In the First MTD Order, the Court dismissed Plaintiff's

fraudulent concealment claim, as originally pled, on this ground.  (*First MTD Order* at 17-20.)  Indeed, California law is clear that "a duty to disclose facts arises only when" there is, among other things, a "transactional relationship" (i.e., "direct dealings") between the parties, such as "seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311-12 (2017).  And the Original Complaint contained no factual allegations showing that there was a direct transactional relationship between Plaintiff and Defendant—just conclusory allegations that the dealership Plaintiff purchased the Vehicle from was Defendant's "agent."  (*See First MTD Order* at 17-20.)

However, the FAC now adds one factual allegation that, if true, would establish a direct economic relationship between the parties, thereby giving Defendant a duty to disclose certain kinds of information to Plaintiff:  "At the time of the sale, [Defendant] entered into a contract with Plaintiff to provide Plaintiff with a warranty for the subject vehicle. The warranty contains the rights and obligations of both Plaintiff and General Motors and is a binding agreement between the parties." (*FAC* at ¶ 6.)  If proven true, the Vehicle's warranty agreement being a direct contract between Plaintiff and Defendant (not just the dealership) would count as a "direct transactional relationship" as defined by *Bigler-Engler*.  7 Cal. App. 5th at 311 ("A duty to disclose facts arises . . . [when the] parties enter[] into any kind of contractual relationship."). (*See also FAC* at ¶ 90 ["(1) Defendant had exclusive knowledge of the material, suppressed facts; (2) Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial representations about the battery safety and performance of the vehicle"].)

3:23-cv-01554-W-AHG

### c)   Plaintiff Has Not Sufficiently Alleged Intent To Defraud

Lastly, Defendant argues that Plaintiff has not sufficiently alleged intent to defraud Plaintiff. (*Motion* at 14-17.)

Indeed, just like the "knowledge" element discussed above regarding the affirmative misrepresentation claim, Plaintiff has still not alleged any facts that, if true, would show Defendant knew of the alleged defects at the time of the Vehicle's sale and withheld them from Defendant in order to defraud him—thus preventing him from meeting the "intent to defraud" element of fraudulent concealment. (*See Supra* Section III(A)(1)(a)*; see First MTD Order* at 9-10.) Accordingly, the fourth cause of action's fraudulent concealment claim must also be dismissed on this ground.[2]

### 3.   UCL Claims (Fifth Cause of Action)

Defendant argues that the fifth cause of action (UCL claim) must be dismissed: (1) in its entirety because Plaintiff has an adequate remedy at law—*i.e.*, damages under his Song-Beverly Act and fraud claims—thus depriving the Court of equitable jurisdiction; (2) the "unlawful" prong must be dismissed because Plaintiff has not alleged an underlying statutory violation; and (3) the "unfair" prong must be dismissed because it does not allege that Defendant has violated a public policy. (*Motion* at 22-25.)

Under the UCL, a business practice is deemed "unfair competition" (and is thus prohibited) if it constitutes either: (1) an unlawful business practice; (2) an

---

[2] Because the Court is dismissing the fraudulent concealment claim on the grounds that Plaintiff has not sufficiently alleged intent to defraud; *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828 (2022) is currently pending before the California Supreme Court; and because the Ninth Circuit's certified question to the California Supreme Court regarding application of the economic loss rule to fraudulent concealment claims is also still pending (*see Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188 (9th Cir. 2021))—the Court does not decide in this Order whether the economic loss rule also serves as a bar to Plaintiff's fraudulent concealment claim.

unfair business practice; or (3) a fraudulent business practice.  CAL. BUS. & PROF. CODE § 17200.  Here, Plaintiff alleges Defendant has engaged in all three.  (*FAC* at ¶¶ 95-132.)  UCL claims are only subjected to Rule 9(b)'s heightened pleading requirement to the extent that they contain allegations sounding in fraud.  (*See First MTD Order* at 10.)  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

### <u>a)</u>     Plaintiff Has Not Alleged Facts Sufficient To Establish Equitable Jurisdiction

The Ninth Circuit has made clear that "[e]quitable jurisdiction is distinct from subject matter jurisdiction, although both are required for a federal court to hear the merits of an equitable claim."  *Guzman v. Polaris Indus. Inc*., 49 F.4th 1308, 1314 (9th Cir. 2022), cert. denied sub nom. *Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023).  Thus, "even when a court has subject matter jurisdiction, '[t]here remains the question of equitable jurisdiction' before 'the District Court properly [can] reach the merits.'"  *Id*. (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975)).

In *Sonner v. Premier Nutrition Corp*., the Ninth Circuit affirmed the district court's dismissal of a case after the plaintiff voluntarily dismissed her sole state law damages claim on the eve of trial—in order to proceed with her equitable California UCL and CLRA claims instead—reasoning that a federal court could only have "equitable jurisdiction" to hear her UCL and CLRA claims (which are "equitable in nature") if she lacked an "adequate remedy at law" (which she did not lack, since she had damages claims prior to voluntarily dismissing them).  971 F.3d 834, 844 (9th Cir. 2020).  Similarly, in *Guzman* the Ninth Circuit, relying on *Sonner*, agreed with the district court's granting of summary judgment against the plaintiff's "equitable UCL claim" because the plaintiff also had a damages claim available to him, thus giving him an "adequate legal remedy" and depriving the district court of "equitable jurisdiction" equitable claim.  49 F.4th at 1311-12.

3:23-cv-01554-W-AHG

Since *Sonner* and *Guzman*, an "intra-circuit split" has developed about "whether it is appropriate to dismiss UCL claims at the pleading stage when they are based on identical facts as other claims providing the legal remedy of damages." *Eason v. Roman Cath. Bishop of San Diego*, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019) (Hayes, J.) (collecting cases). While some courts have gone so far as to say that *Sonner* "has minimal application at the pleading stage," *e.g.*, *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023), *Sonner* clearly reasoned that "the operative *complaint* does not allege that [plaintiff] lacks an adequate legal remedy." *Sonner*, 971 F.3d at 844 (emphasis added); *see Fan v. Home Depot U.S.A., Inc.*, 2022 WL 16964099, at *3 (E.D. Cal. Nov. 16, 2022) ("[T]he plaintiff's failure to plead an inadequate legal remedy was an important component of the court's reasoning in Sonner."). *Sonner's* explicit reference to a lack of allegations of an adequate legal remedy in the "complaint" demonstrates more than a "limited" application at the pleading stage.

However, the burden plaintiffs face to establish the "lack of an adequate legal remedy" is certainly lower at the pleading stage than it is at the MSJ or "eve of trial" stages in *Guzman* and *Sonner*. Indeed, to survive a motion to dismiss, plaintiffs need only plead facts that, if true, would show they lack an adequate legal remedy. *See Sonner*, 971 F.3d at 844 (*quoting O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)) (holding that plaintiff must "plead 'the basic requisites of the issues of equitable relief' including 'the inadequacy of remedies at law.'"); *see also* FED. R. CIV. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically . . . ."), (d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). For instance, a plaintiff seeking to recover the purchase price of a product may allege facts which, if true, demonstrate that the legal remedy of damages is inadequate when compared to the equitable remedy of restitution—in that to recover a full refund in damages would require a showing that the product is of no value while no such showing is

3:23-cv-01554-W-AHG

required for restitution. *Valiente v. Simpson Imports, Ltd.*, -- F. Supp 3d --, 2024 WL 695700, at *13 (N.D. Cal. Feb. 20, 2024) ("[Plaintiff] alleges that she 'may lack an adequate remedy at law' if the amount of damages recoverable is less than the price premium she paid for [defendant's products]."); *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023) (pointing to plaintiff's allegation "that for a full refund, Plaintiffs would have to show that the product has no market value, while that showing is not required for restitution" as sufficient to satisfy *Sonner*); *see Sonner*, 971 F.3d at 844 n.8 (citations omitted) ("'[A] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient.' But [Plaintiff] fails to explain how damages are any less prompt, certain, or efficient than restitution, particularly when a jury trial for damages was just two months away when she amended her complaint.").

And while discovery may eventually show allegations regarding the inadequacy of legal remedies to be unfounded, thereby rendering disposition of the equitable claims appropriate at a later stage in the case (*e.g.*, summary judgment), a plaintiff's factual allegations of "no adequate remedy at law" will suffice to establish equitable jurisdiction at the pleading stage. *See Eason*, 414 F. Supp. 3d at 1282 ("[D]iscovery may reveal that [the plaintiff's] claims providing legal remedies are inadequate for any number of reasons, despite the fact that their allegations appear adequate.").

That being said, a plaintiff must still actually plead the lack of an adequate remedy at law. Here, Plaintiff has not done so. The FAC does not even make the conclusory allegation that Plaintiff "lacks an adequate remedy at law," let alone allege any facts that, if true, would establish that Plaintiff's demand for legal damages in his Song-Beverly Act and fraud causes of action are somehow inadequate. (*See generally FAC*.)

3:23-cv-01554-W-AHG

**b)** **Plaintiff Has Not Sufficiently Alleged Violation Of Any Underlying Statute For The "Unlawful" Prong**

Even if the Court had equitable jurisdiction over Plaintiff's UCL claim, it would still fail under the "unlawful" prong because Plaintiff has sufficiently alleged a violation of an underlying statute.

While UCL claims are not necessarily subjected to Rule 9(b)'s heightened pleading requirements, UCL allegations sounding in fraud must be plead with particularity. (*First MTD Order* at 10.) *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (emphasis added) (stating that "[plaintiff] asserts that alleged actions by [defendants] . . . state claims under . . . CAL. BUS. & PROF. CODE §§ 17200 and 17500. Fraud is not an essential element of a claim under these statutes. . . . [W]here fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirement of Rule 9(b)" and that while the complaint may not explicitly use the word "fraud," allegations of "*the circumstances constituting fraud*" count as allegations/averments of fraud triggering Rule 9(b).).

Here, Plaintiff asserts that Defendant violated California Business and Professions Code section 17500—which makes it unlawful for anyone to publicly make statements which the speaker knows or should know to be "untrue or misleading" with the intent of inducing the public to enter into any obligations relating to the statement. CAL. BUS. & PROF. CODE § 17500. Specifically, Plaintiff asserts that: "Defendant's use of a defective battery, as alleged herein, is *false, deceptive, misleading* . . . . Defendant *knew or should have known* of its unlawful conduct . . . . [T]he *misrepresentations* by Defendant detailed above constitute an unlawful business practice . . . ." (*FAC* at ¶¶ 123-25.)

These are essentially allegations of fraudulent misrepresentation and therefore must be plead with specificity. As explained above regarding Plaintiff's claims of fraudulent misrepresentation claim, Plaintiff has failed to sufficiently

allege Defendant's knowledge of the alleged defects in the Vehicle at the time of sale. (*See Supra* Section III(A)(1)(a).)  For the same reasons, Plaintiff's UCL claim under the "unlawful" prong also fails because the FAC does not sufficiently allege Plaintiff knew or should have known that the complained of statements to be "untrue or misleading," as required by California Business and Professions Code section 17500.

**c)**   **Absent The Equitable Jurisdiction Issue, Plaintiff Has Alleged Violation Of The "Unfair" Prong**

Absent Plaintiff's failure to establish equitable jurisdiction, the FAC would not fail the "unfair" prong of the UCL simply for failing to allege that Defendant violated an "established public policy."  As this Court has already ruled, the Ninth Circuit allows plaintiffs to establish UCL claims under the "unfair prong" via at least three separate tests: (1) the "Tethering Test"; (2) the "Immoral Test"; and (3) the "Balancing Test."  (*First MTD Order* at 12-14.)  While Plaintiff may not have alleged a violation of any underlying public policy as required by the Tethering Test, the FAC (just like the original Complaint) continues to allege facts sufficient to state an "unfair" UCL claim under the Immoral and Balancing Tests.  (*See FAC* at ¶¶ 103 ["Defendant's . . . [use of] a defective battery in the vehicle causes injuries to Plaintiff, who ended up overpaying for the vehicle and receiving a quality of vehicle less than what they expected to receive."]; 106 ["Defednant's . . . [use of] the defective battery in the vehicle has no utility and financially harms purchases."].)  (*See First MTD Order* at 14.)  The Court has already ruled on this issue once before in the First MTD Order, it will not relitigate it.

**B.**    **Leave to Amend**

In summation, this Order holds that:

- The fourth cause of action's fraudulent misrepresentation claim regarding the Vehicle's range, battery capacity, and safety must be

17

3:23-cv-01554-W-AHG

dismissed because it fails to allege sufficient facts regarding Defendant's knowledge of falsity or Plaintiff's justifiable reliance.

- The fourth cause of actions' fraudulent misrepresentation claim regarding replacing the Vehicle's battery must be dismissed because it fails to allege sufficient facts regarding Defendant's knowledge of falsity, Defendant's intent to induce reliance, and Plaintiff's damages.

- The fourth cause of action's fraudulent concealment claim must be dismissed because it fails to allege sufficient facts regarding Defendant's intent to defraud Plaintiff.

- The fifth cause of action (UCL claims) must be dismissed in its entirety because Plaintiff has not alleged facts that, if true, would give this Court equitable jurisdiction of the UCL claims.  Additionally, the fifth cause of action fails the "unlawful" prong of the UCL because it does not sufficiently allege violation of an underlying statute.

Plaintiff asks the Court for leave to amend the FAC if it grants the Motion. (*Opposition* at 3.)  Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires."  Furthermore, Ninth Circuit precedent is clear that leave to amend "should be granted with 'extreme liberty'" and only be denied when "it is clear . . . that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

On the one hand, the Court has already given Plaintiff one opportunity to cure the deficiencies with its fourth and fifth causes of action. (*See First MTD Order*.)  That being said, the Court is willing to give Plaintiff one last chance to amend his complaint.  However, any amended complaint would do well to contain the following:

- With respect to the fraudulent misrepresentation claim regarding the Vehicle's range, battery capacity, and safety: (1) identify specific instances of misrepresentations by Defendant that Plaintiff saw and relied on in purchasing the Vehicle; and (2) allege facts that, if true, show Defendant was aware of the specific battery issue(s) suffered by the Vehicle at the time it was sold.

- With respect to the fraudulent misrepresentation claim regarding replacing the Vehicle's battery, allege facts showing that: (1) at the time Defendant allegedly promised to replace the Vehicle's battery, Defendant knew it would not replace the battery; (2) Defendant intended to induce Plaintiff's reliance in doing so; and (3) Plaintiff has been damaged by Defendant's allegedly false promise to replace the battery.

- With respect to the fraudulent concealment claim, allege facts that, if true, show Defendant was aware of the specific battery issue(s) suffered by Vehicle at the time it was sold and intentionally concealed them from Plaintiff in order to defraud him.

- With respect to the fifth cause of action (UCL claim) allege facts that, if true, would show: (1) how Plaintiff receiving damages via his Song-Beverly Act and/or fraud claims would be inadequate; and (2) (regarding the "unlawful UCL prong) that Defendant violated an underlying statue (*e.g.*, for California Business and Professions Code section 17500, that Defendant was aware of the specific battery issue(s) suffered by Plaintiff's Vehicle at the time it was sold).

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** the Motion to Dismiss the FAC's Fourth and Fifth causes of action [Doc. 19].  The Court **GRANTS** Plaintiff

3:23-cv-01554-W-AHG

leave to file a second amended complaint.  Plaintiff may file a second amended complaint **on or before August 16, 2024**.

**IT IS SO ORDERED.**

Dated:  July 16, 2024

Hon. Thomas J. Whelan
United States District Judge

3:23-cv-01554-W-AHG